IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

Joseph L. Green,                    )
    Plaintiff,                    )
                        )
v.                                  )       **1:14cv1257 (AJT/IDD)**
                        )
Jeffery Newton and                  )
Dr. Boakye,                         )
    Defendants.                   )

## MEMORANDUM OPINION

Joseph L. Green, a Virginia inmate proceeding pro se, has filed a civil rights action

pursuant to 42 U.S.C. § 1983, alleging that the defendants, Superintendent of Riverside Regional

Jail Jeffery Newton and Edward Boakye, M.D., showed deliberate indifference to his serious

medical needs in violation of his Eighth Amendment constitutional right.   The defendants have

filed Motions for Summary Judgment, as well as memoranda of law and supporting exhibits.

Dkt. Nos. 29, 30, 32, 33.   Plaintiff was given the Notice required by Local Rule 7(K) and the

opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.

1975).   Plaintiff has not filed any response.   For the reasons that follow, defendants' Motions for

Summary Judgment must be granted.

### I. Factual Background

Plaintiff began his incarceration at Riverside Regional Jail ("Riverside") on July 8, 2013,

and he was transferred to the Virginia Department of Corrections ("VDOC"), Greensville

Correctional Center on December 22, 2014.   Dkt. No. 30 (Newton Decl).   Jeffery Newton has

been the superintendent of Riverside since August 2011, and was the acting superintendent for

plaintiff's entire stay at Riverside.   Id.   While plaintiff was housed at Riverside, the policy and

practice at Riverside was to ensure that inmates received appropriate and high-quality medical care for any medical needs.  Id.  Also during this time, medical services for inmates at Riverside were provided by Correct Care Solutions ("CCS").  Id.  All judgments involving medical treatment of Riverside's inmates were made by appropriately-qualified CCS medical staff.  Id.  CCS medical staff was responsible for determining whether inmates needed health care that went beyond the resources available in-house at CCS, and if CCS determined that an inmate did need outside care, it was responsible for obtaining that health care for the inmate, including transportation to an appropriate facility where care would be provided.  Id.  Dr. Boakye asserts that he had no decision-making power in regards to whether any inmate would receive a heart transplant while imprisoned at Riverside.   Dkt. No. 33 (Ex. 1, 2).

While plaintiff was at Riverside, he was housed in the separate Medical Housing section, for inmates with special medical needs.  Id.  Plaintiff is a disabled American veteran who suffers from a serious heart issue.  Dkt. No. 4 (Am. Compl.).   In his complaint, plaintiff alleged that he was wrongfully denied the opportunity to see doctors outside of Riverside and was denied access to an outside Veteran's Hospital where he hoped to receive a heart transplant.  Id.  Plaintiff further alleged that his L-VAC heart pump malfunctioned on July 1, 2014, leaving him in "intense, excruciating pain" and at "serious risk of dying."  Id.  He claims that no one in the medical unit at Riverside knew how to handle such an emergency, and he alleges that he should have been seen by doctors at the Veteran's Hospital where the machine was installed.  Id.  Plaintiff claims that the superintendent of the jail was aware of his problems and did nothing to help him.  Id.  Thus, plaintiff brought this § 1983 lawsuit claiming that Superintendent Newton and Dr. Boakye were deliberately indifferent to his serious medical needs and subjected him to cruel and unusual punishment at Riverside, specifically in regards to issues with his heart pump.  Id.

Riverside's administrative staff and Superintendent Newton met with the CCS medical personnel and the CCS Medical Director on a monthly basis to discuss current health trends in the inmate population, significant medical cases, special needs inmates, and hospitalizations.   Dkt. No. 30 (Newton Decl).   Those meetings would typically include briefings as to how many inmates at Riverside would be using medical devices, such as oxygen machines, wheelchairs, and prosthetics, and Superintendent Newton believes he may have been made generally aware that there was an inmate at Riverside with a heart pump.   Id.   However, Superintendent Newton asserts that he never had any further knowledge of plaintiff having issues with his heart pump.   Id.

i. The Grievance Procedure

At all times relevant to this matter, Riverside had established procedures for inmate grievances, and inmates were made aware of that grievance procedure upon their entrance into institution.   Id.   Under this procedure, a grievance must be submitted within 24 hours of the occurrence of the complaint or issue.   Dkt. No. 30 (Minton Decl).   Riverside staff assigns a unique Grievance Control Number to every grievance received from an inmate.   Id.   The first two digits of the Grievance Control Number represent the year of the grievance, the next two digits represent the month of the grievance, and the remaining digits represent the numerical sequence of the grievances received.   Id.

The official response to a grievance is noted on the reverse side of the Inmate Grievance Form, and the staff member has seven working days to respond to the grievance.   Id.   If an inmate is unsatisfied with the response to his grievance, he may appeal the response using an Inmate Grievance Appeal Form.   Id.

Plaintiff did not submit any grievance at Riverside until November 13, 2014, and only that one particular grievance was received by Riverside.   Id.   Plaintiff wrote his Riverside inmate

3

number, 32749, on the "ID #" line of the Grievance Form that he submitted on November 13,

2014, and the grievance was assigned #14-11-31685 by Riverside staff.  Id.  In that grievance,

plaintiff stated:

> On the 12[th] of Nov 2014 in Housing Unit MH-2 Nurse Daniels was issuing meds to
> me at 10:30 AM.  Lunch arrived during med call.  Ms. Daniels checked my blood
> sugar and I needed some insulin.  She said go ahead and eat.  I'll be back to give
> you some insulin.  Ms. Daniels did not return.  We were locked down at 11:30
> AM and Ms. Danield still haven't returned to give me my insulin.  Officer
> Shumake was doing her 30 min checks and I stop her and ask where was the nurse,
> I didn't get my insulin yet.  Officer Shumake ask me are you ok?  I said yes.
> Officer Shumake said I'll call medical and find out whats going on.  Officer
> Shumake inform me, Ms. Daniels was not there and Nurse Daniels went to lunch.

Dkt. No. 30 (Minton Decl., Ex. A).  The response to this grievance states that,

"Documentation shows that you received your insulin on 11/12 at 11:00 AM & 4:00 PM."

On December 1, 2014, plaintiff submitted an appeal to this response, writing his Riverside

inmate number, 32749, on the "ID#" line of that Inmate Grievance Appeal Form as well.

Dkt. No. 30 (Minton Decl., Ex. B).  In that appeal, plaintiff stated:

> The information that Ms Daniels gave me my insulin at 11:00 AM is not
> true on 11/12 is incorrect.  It was way past 11:00 AM.  Officer Shumake
> can vouch for me about this matter.

Id.  Riverside Assistant Superintendent Walter Minton signed the Inmate Grievance

Appeal Form and plaintiff signed at the bottom as well, indicating that he recognized this

grievance appeal was the final step in the grievance process and rendered his

administrative remedies exhausted, with respect to that particular complaint.  Id.

The records at Riverside reflect that plaintiff never submitted any grievance

regarding his heart pump or any of the related issues he complains about in this lawsuit.

Dkt. No. 30 (Minton Decl.).  When plaintiff was released to VDOC on December 22,

2014 and transferred to Greensville Correctional Center, he initialed his Inmate Release

Checklist, representing that he had no pending grievances at Riverside.   Dkt. No. 30 (Minton Decl., Ex. C).

With respect to the Inmate Grievance Form dated "8/11/14" attached to plaintiff's Amended Complaint, (Dkt. No. 4, (Am. Compl., Ex. E)), that document does not appear in Riverside's grievance records or logs, nor has it been found anywhere else in Riverside's records despite a thorough search.   Dkt. No. 30 (Minton Decl.); see also Dkt. No. 30 (Minton Decl., Ex. D).   Additionally, there is no Grievance Control Number written on the document, there is no written response on the backside of the form, and no one at Riverside recognized the signature or could decipher who had "signed" on the document. Id.   Further, on this document, rather than using his Riverside number, 32749, as his ID number, plaintiff used his VDOC number, 1548499.   Id.   It is unexplainable how plaintiff would even have known of this VDOC number on August 11, 2014, over four (4) month before he was transferred to VDOC custody.   Id.

With respect to plaintiff's letter dated June 5, 2014 that was also attached to his Amended Complaint, that letter also does not appear in Riverside's records or logs of grievance or anywhere else in the system.   Dkt. No. 30 (Minton Decl.); see also Dkt. No. 30 (Minton Decl., Ex. E).   Although this letter indicates that plaintiff was seeking to appeal a grievance response, it does not mention a Grievance Control Number or date of the underlying grievance and response that he was supposedly appealing from.   Id. Moreover, the letter dated June 5, 2014 refers to incidents that occurred on July 1, 2014 and August 2, 2014, indicating that the letter was not actually prepared in June 2014.   Id.

## II. Procedural History

On September 24, 2014, plaintiff began this lawsuit by filing a complaint and naming

Riverside Regional Jail, VDOC, the Commonwealth of Virginia, Superintendent Jeffery Newton, and Dr. Boakye as defendants. Dkt. No. 1. In an Order dated November 6, 2014, this Court instructed plaintiff to particularize and amend his complaint. Dkt. No. 2. The Order additionally directed plaintiff to provide copies of administrative grievances and letters to show he had exhausted his administrative remedies at Riverside. Id.

On December 4, 2014, plaintiff filed his Amended Complaint, in which he added Nurse Keys and Nurse Fowler as defendants. Dkt. No. 4. In an Order dated January 14, 2015, this Court dismissed the claims against the Commonwealth of Virginia, VDOC, Riverside, Nurse Keys, and Nurse Fowler, and directed service upon Dr. Boakye and Superintendent Newton. Dkt. No. 7.

### III. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the nonmoving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in

6

favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita, 475 U.S. at 587.

## IV. Analysis

### A. Plaintiff Failed to Exhaust His Administrative Remedies

This case must be dismissed with prejudice because plaintiff failed to exhaust his administrative remedies, and his chance to exhaust those remedies has passed. The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust all available administrative remedies before filing suit under 42 U.S.C. § 1983. Specifically, it provides "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Booth v Churner, 531 US 956 (2001) (as long as a grievance tribunal has the authority to take some responsive action, the PLRA requires administrative exhaustion even if

the grievance procedure does not allow monetary damages and prisoner seeks only monetary damages).    To properly exhaust his administrative remedies, a prisoner must "complete the administrative review process in accordance with the applicable procedural rules" and deadlines. Woodford v. Ngo, 548 U.S. 81, 88 (2006).    The Supreme Court has held that where an inmate has filed grievances that are rejected as untimely, even where he filed all necessary appeals, constitutes a failure to exhaust administrative remedies, and the case must be dismissed.    Id. Courts have no discretion to dispense of the exhaustion requirement in lawsuits where the PLRA applies, and a case must be dismissed where it is apparent that an inmate failed to properly exhaust available administrative remedies before filing suit.    Id. at 89; see also Anderson v. XYZ Corr. Health Servs., 407 F.3d 674 (4th Cir. 2005).

The undisputed evidence shows that plaintiff failed to exhaust his administrative remedies, and his lawsuit must be dismissed with prejudice.    Plaintiff failed to submit any grievances regarding any alleged conduct related to his heart pump or heart transplant.    Plaintiff has not submitted any credible evidence indicating that the grievances he attached to his Amended Complaint were actually authentic and appropriately submitted at Riverside.    Plaintiff is no longer incarcerated at Riverside; thus, the grievance procedure is no longer available to him.    Additionally, plaintiff has long since defaulted on the deadlines for the steps of the grievance procedure, and he will never be able to file the necessary grievances in order to exhaust his administrative remedies.    As such, he has failed to exhaust all administrative remedies available to him before he filed this lawsuit pursuant to § 1983.    His claims against all defendants must be dismissed with prejudice, as they are barred from litigation by the PLRA. See generally Woodford, 548 U.S. 115-20.

B. Defendants Did Not Violate Plaintiff's Eighth Amendment Rights

8

Moreover, even if plaintiff could show that the grievances he has provided to the Court are genuine and his claim was exhausted, summary judgment in favor of defendant Superintendent Newton is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that he did not violate plaintiff's Eighth Amendment Rights.[1]

### I. Superintendent Newton Cannot Be Held Liable in his Supervisory Role

Supervisory officials can be held liable for constitutional injuries inflicted by their subordinates only in certain circumstances. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)). Supervisory liability is premised on the "recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. at 798 (quoting Slakan, 737 F.2d at 372-73). Therefore, to establish supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (internal citations omitted).

The undisputed evidence presented by Superintendent Newton shows that he had no personal knowledge that plaintiff was at any "unreasonable risk" of constitutional injury. See Dkt. No. 30 (Newton Decl). Further, plaintiff has failed to establish any claim that Supervisor Newton personally committed any actions that violated plaintiff's rights. Thus, Superintendent

---

[1] As explained above, Dr. Boakye is entitled to summary judgment because plaintiff failed to exhaust his administrative remedies; however, the Court declines to reach the additional merits of Dr. Boakye's argument at this time. Because he has only offered journal articles that are not personally specific to him to support his Motion for Summary Judgment, Dr. Boakye has failed to offer adequate evidence demonstrating he is entitled to judgment as a matter of law.

Newton is entitled to summary judgment.

      C. <u>Plaintiff has Committed Fraud on the Court</u>

      If defendants were not so clearly entitled to summary disposition due to plaintiff's failure to exhaust his administrative remedies, then this Court would be obligated to further investigate defendants' claim that plaintiff deceived this Court by filing forged grievances.   However, as it is established on the record now before the Court that defendants are entitled to judgment as a matter of law, further delay in resolving this case to satisfy the procedural requirements of Rule 11 is not warranted at this time.

### IV. Conclusion

      For the foregoing reasons, defendants' Motions for Summary Judgment must be granted. An appropriate Order shall issue.


Entered this _____3_d____ day of ___October_____ 2015.


                                             _____

Alexandria, Virginia                                 Anthony J. Trenga
                                         United States District Judge